UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

| | |
|---|---|
| THOMAS ANDREW CENSKE, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:08-cv-283 |
| ) | |
| v. ) | HON. R. ALLAN EDGAR |
| ) | |
| UNKNOWN EKDAHL, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff has paid the filing fee in this action. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against all of the named Defendants except for Defendant Ekdahl. The Court will serve the complaint against Defendant Ekdahl with regard to his claim that he was deprived of a shower, and clean clothes and bedding for four days after use of a chemical agent.

**Discussion**

I.   Factual Allegations

Plaintiff Thomas Andrew Censke, an inmate at the Marquette County Jail, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Sergeant Unknown Ekdahl, Warden Unknown McQuiggin, Deputy Unknown Toibley, Assistant Resident Unit Supervisor Unknown Perry, Assistant Deputy Warden Unknown Smith, Inspector Unknown Smith, Lieutenant Unknown Kinnunen, Resident Unit Officer Unknown Burke, Resident Unit Officer Unknown Nelson, Unknown Parties at AMF, Officer Unknown Brandenberg, S. Frankiowski, Lieutenant Unknown Reese, Warden Unknown Winn, Unknown Party at IBC, Officer Unknown Dunn, Unknown Mickey, Unknown Gainer, Sergeant Unknown Phillips, Warden Unknown Curtain, Unknown Party at EOF, MDOC Director Patricia Caruso, Deputy Unknown Straub, Unknown Parties at the director's office and internal affairs, Governor Jennifer Granholm, the State of Michigan, and Correctional Medical Services, Inc.

Plaintiff alleges that the named Defendants have violated numerous constitutional rights as well as state law, have engaged in racketeering activity in violation of RICO, and have violated the Americans with Disabilities Act (ADA) and the Rehabilitation Act. Plaintiff seeks damages.

II.   Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal

Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that Plaintiff may not maintain a § 1983 action against the State of Michigan. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In addition, the State of Michigan is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the State of Michigan.

A careful review of Plaintiff's initial and supplemental pleadings reveal that Plaintiff's claims are rambling and incoherent. Plaintiff claims that Defendant Ekdahl violated his rights by ordering him to bend and spread naked during a strip search, during which Defendant Ekdahl deployed chemical agents on Plaintiff's rectum and genitals. This action was observed by Defendants Warden McQuiggin, Assistant Deputy Warden Smith, and Assistant Deputy Warden

Perry. Plaintiff states that Defendant Ekdahl had come to his cell to obtain a second DNA sample, despite the fact that a second sample is not required. Defendant Ekdahl asked Plaintiff if he was refusing to exit the cell, and Plaintiff stated that he was not refusing. Plaintiff's conduct also indicated his compliance because he had fully stripped naked and was attempting to spread his buttocks for the search. In addition, Defendant Ekdahl was aware of the fact that Plaintiff had a back injury which impeded his full movements. Despite this fact, Defendant Ekdahl told his co-workers that Plaintiff was disobeying orders in order to justify use of a chemical agent. After exiting the cell, Defendant Ekdahl instructed other employees to shut the door to the cell. When Plaintiff was returned to the cell, the door was sealed and the ventilation system was not turned back on for fifteen minutes, causing Plaintiff to suffer burning in his nose, lungs, eyes and skin. Plaintiff states that he was not allowed a shower, change of clothes or new bedding for a period of four days. Plaintiff asserts that prior to this incident, Defendant Ekdahl had threatened to "beat the shit" out of him when he got out of prison and that Plaintiff's beard would "hide the stretch marks from his cock."

Plaintiff claims that Defendant Ekdahl repeatedly threatened to assault him when he got out of prison. Plaintiff kited Defendant CMS a total of six times between March 3, 2008, and March 7, 2008, but did not receive any medical attention. Plaintiff states that these kites were picked up by Defendants Richards and Chosa, who disregarded Plaintiff's complaints. Plaintiff claims that on March 18, 2008, Defendant Yankovich told him that he was trying to thwart one of Plaintiff's grievances.

On March 19, 2008, Defendant Kinnunen and two other officers took a third DNA sample. When Plaintiff objected that this violated his rights, Defendant Kinnunen told Plaintiff that he did not know the law and that it did not matter if Plaintiff objected. Plaintiff claims that this

constitutes a battery. While on his way to x-rays with CMS on March 26, 2008, Defendant Kinnunen told Plaintiff that they were going to obtain another DNA sample, and laughed that they had tricked Plaintiff. Plaintiff states that CMS employee R.N. Candier failed to provide him with a proper receipt or confirmation of the third DNA sample.

Plaintiff claims that the above conduct violated his Eighth Amendment rights. The Eighth Amendment prohibits cruel and unusual punishment. Traditionally, the cruel and unusual punishment clause was interpreted to prohibit barbarous or shocking forms of punishment. Over the years, the concept of cruel and unusual punishment has been expanded to encompass punishments which are unconscionably excessive in relation to the offense committed. *See Gregg v. Georgia*, 428 U.S. 153, 173, 96 S. Ct. 2909, 2925 (1976). Furthermore, punishment which is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 2399 (1981). *See also*, *Gregg*, 428 U.S. at 173, 96 S. Ct. at 2925.

The Eighth Amendment's proscription against cruel and unusual punishment has also been extended to require certain minimal living conditions within the prison environment. Under the recently clarified "deliberate indifference" standard applicable to such claims, Plaintiff must establish both that he is being denied "the minimal civilized measure of life's necessities" and that the Defendants have been deliberately indifferent to Plaintiff's needs. *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991).

This is a two-part test involving both an objective and a subjective element. First, Plaintiff must establish that he is being denied a single, identifiable necessity of civilized human existence. *Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324. In *Rhodes*, the Supreme Court explained

> In *Estelle v. Gamble*, *supra*, we held that the denial of medical care is cruel and unusual because, in the worst case, it can result in physical torture, and even in less serious cases, it can result in pain without any penological purpose. In *Hutto [v. Finney*, 437 U.S. 678, 98 S. Ct. 2565 (1978)], the conditions of confinement in two Arkansas prisons constituted cruel and unusual punishment because they resulted in unquestioned and serious deprivations of basic human needs. Conditions other than those in *Gamble* and *Hutto*, alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency that we recognized in *Gamble*. But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

*Rhodes*, 452 U.S. at 347, 101 S. Ct. at 2399.

The Eighth Amendment is concerned only with "deprivations of essential food, medical care or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348, 101 S. Ct. at 2400. One court has included such basic human needs as minimally adequate food, clothing, shelter, sanitation, medical care, and personal safety within the "core" requirements of the Eighth Amendment. *Grubbs v. Bradley*, 552 F. Supp. 1052, 1222 (M.D. Tenn. 1982). Plaintiff cannot rely upon the overall conditions of his confinement to establish an Eighth Amendment violation unless he can demonstrate that, in combination, the conditions of his confinement deprived him of a single, identifiable human need. *Wilson*, 501 U.S. at 304, 111 S. Ct. at 2327.

The subjective component of the deliberate indifference standard "mandate[s] inquiry into a prison official's state of mind." *Wilson*, 501 U.S. at 298-299, 111 S. Ct. at 2324. Only that conduct which is wanton or deliberately indifferent to Plaintiff's needs constitutes conduct subject to scrutiny under the Eighth Amendment. *Id.* at 302-303.

> Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny, however. ... [C]onduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. This reading of the Clause underlies our decision in *Estelle v. Gamble*, *supra*, at 105-106, which held that a prison physician's 'negligen[ce] in diagnosing or treating a medical condition' did not suffice to make out a claim of cruel and unusual punishment. It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

*Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986); *see also Wilson*, 501 U.S. at 298-299, 111 S. Ct. at 2324.

Conduct which is negligent or even grossly negligent does not violate the Eighth Amendment. *See Walker v. Norris*, 917 F.2d 1449, 1454 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988). In *Whitley v. Albers*, 475 U.S. 312, 106 S. Ct. 1078 (1986), a case in which a prisoner was shot by a prison guard during an effort to quell a prison disturbance, the Supreme Court equated the standard with conduct which "evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.* at 321. In short, in order to satisfy the subjective element of the *Wilson* test, the official's conduct "must demonstrate deliberateness tantamount to an intent to punish." *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993).

Plaintiff claims that the use of a chemical agent to obtain the DNA sample constituted excessive force. The Eighth Amendment prohibits cruel and unusual punishment, and limits the power of the states to punish those convicted of a crime. Among unnecessary and wanton infliction

of pain are those that are "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321). Under this standard, even deadly force may be constitutionally appropriate under certain circumstances. *Gravely v. Madden*, 142 F.3d 345, 348 (6th Cir. 1998).

The analysis of the degree of force used must be made in the context of the constant admonitions by the Supreme Court that courts must accord deference to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321-22. Plaintiff attaches copies of grievances, appeals and responses to his complaint. according to the step I response to AMF-08-03-063-26A, which is attached as an exhibit to Plaintiff's complaint:

> Grievant interviewed 03/14/08 at 1300 hrs to no avail. Per PD 03.01.135 and MCL 791.233d, a prisoner shall not be discharged unless he has provided a DNA sample. The grievant refused to provide a sample. Authorization was given by Warden McQuiggin to collect the sample by health care staff at AMF. Chemical agents were authorized and administered in an attempt to gain the cooperation of the grievant. Health care staff collected the DNA

> sample. Proper critical incident report was completed and this entire incident was filmed.

(*See* Exhibit D, p. 3.)

Even if it is true that Plaintiff did not have adequate time to comply with the order to submit to a search, Defendants' use of force was reasonable given the fact that Plaintiff had been refusing to provide the DNA sample when requested. Inmates cannot be permitted to decide which directives they will obey and when they will obey them. *See Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). In circumstances where lawful orders or rules are being disregarded, prison officials are entitled to use a reasonable amount of force to obtain compliance. *Id.* "One can quickly reason what would happen in a maximum security prison without proper discipline." *See Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). In an unpublished case, the Sixth Circuit stated:

> Plaintiff was sprayed with gas only after he refused to allow Officer Beesley to place him in restraints. Under these circumstances, the defendants acted reasonably in spraying gas at plaintiff. This allowed them to restrain plaintiff in a more peaceful manner. Therefore, it was plaintiff's own conduct which necessitated the use of the gas.

*Knuckles El v. Koskinen*, No. 97-1642, 1998 WL 415847, at *2 (6th Cir. June 16, 1998). Similarly, Plaintiff's own conduct in refusing to provide a DNA sample required the use of force to obtain his compliance.

The decision to use a chemical agent to obtain physical control is generally preferable to the use of physical force. The response team could have attempted a "cell-rush" with shields, truncheons, and handcuffs to forcibly enter Plaintiff's cell in an attempt to subdue and restrain him. Other courts have found that these types of physical confrontations are less safe than using tear gas or mace because of the greater risk of injury to staff, the inmate, or both. *Caldwell*, 968 F.2d at 602;

*Soto*, 744 F.2d at 1262. Thus, the Defendants in this action choose to use a lesser degree of force. Plaintiff's alleged injuries, which include temporary pain, coughing, dizziness, skin and eye irritation, and mental distress, appear to be no more than the normal aftereffects of being exposed to gas and/or chemical agents. Given the undisputed facts, the decision to use a chemical agent in order to obtain the necessary DNA sample did not violate the Eighth Amendment.

Plaintiff also claims that the fact that the chemical agent was sprayed on his buttocks constitutes sexual harassment in violation of the Eighth Amendment. Plaintiff also claims that Defendant Ekdahl made inappropriate sexual comments to him on a number of occasions. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female

prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Other courts have held that even minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v.*

*Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

If true, Defendant Ekdahl's conduct toward Plaintiff was reprehensible, but it does not rise to the level of an Eighth Amendment violation. Plaintiff does not allege that Defendant Ekdahl ever touched him or had form of physical contact with him. Acts of verbal sexual harassment, standing alone, are insufficient to state a claim under the Eighth Amendment. *See Morales*, 278 F.3d at 132; *Zander*, 1998 WL 384625, at *2. Moreover, as noted above, Defendant Ekdahl's use of a chemical agent given the circumstances did not rise to the level of an Eighth Amendment violation. Therefore, Plaintiff's allegation fails to state an Eighth Amendment claim against Defendant Ekdahl.

Plaintiff claims that Defendant Ekdahl threatened to "beat the shit" out of him once he was released from prison. Plaintiff also asserts that on April 3, 2008, Defendant Ekdahl made threatening statements about taking Plaintiff's legal property if it was not put away, however, Plaintiff fails to state that Defendant Ekdah followed through on his threats. Use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997)(verbal harassment is

insufficient to state a claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Ekdahl arising from his alleged verbal abuse.

Use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997)(verbal harassment is insufficient to state a claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not

sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Depky arising from his alleged verbal abuse.

Plaintiff claims that he was improperly deprived of medical care after he was sprayed with a chemical agent, and that he suffered from burning in his nose, lungs, eyes and skin. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). In this case, Plaintiff merely complains of burning in his nose, lungs, eyes and skin. Such allegations do not constitute a serious medical need for purposes of the Eighth Amendment.

In addition, Plaintiff states that pursuant to Defendant Ekdahl's instructions, he was not allowed to shower, or to change his clothes and bedding for a period of four days. In the step I grievance AMF-08-02-522-03d, Plaintiff alleges that in February of 2008, the ventilation system was not properly cleaned, causing him to suffer respiratory symptoms. The response states that the cell vents in the wings were vacuumed on a regular basis, but that extremely dry conditions during the winter could cause coughs and nose bleeds. (*See* Exhibit M, p. 3.) The court concludes that Defendant Ekdahl's conduct in requiring Plaintiff to wear the same clothes and use the same bedding for four days after they had been sprayed with a chemical agent rises to the level of an Eighth Amendment violation. Therefore, Plaintiff's claims against Defendant Ekdahl for this conduct may not be dismissed upon initial review.

According to the step III response to AMF-08–01-243-08d, Plaintiff was complaining that he had been required to provide a second DNA sample. The response states that although a DNA sample had been paid for in the past, it was not on file with the Michigan State Police, which is required prior to discharge from prison. (*See* Exhibit E, p. 1.) Plaintiff claims that this violated state procedural requirements. However, A state's failure to comply with its own law, rule or regulation does not by itself state a claim under Section 1983. *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir.), *cert. denied*, 504 U.S. 915 (1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986). Section 1983 is addressed to remedying violations of federal law, not state law.

Plaintiff also claims that Defendants' conduct constitutes racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, et seq. In order to prevail in a civil RICO claim, plaintiff must prove three elements: (1) the identification of

a person, who, (2) through a pattern of racketeering activity, (3) uses or invests income derived therefrom to acquire an interest in or to operate an enterprise engaged in interstate commerce, or acquires, maintains an interest in, or controls such an enterprise. *See H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 232 (1989); *see also Call v. Watts*, No. 97-5406, 1998 WL 165131, at * 2 (6th Cir. Apr. 2, 1998); *Michalak v. Edwards*, Nos. 96-1970, 96-1972, 1997 WL 561424, at * 3 (6th Cir. Sept. 9, 1997); *Mitchell v. Biomagnetic Resonance, Inc.*, No. 96-1579, 1997 WL 259367, at * 4 (6th Cir. May 15, 1997). To prove a pattern of racketeering activity, it is necessary for Plaintiff to present evidence of at least two predicate acts of racketeering activity. *H.J. Inc.*, 492 U.S. at 237. In this case, Plaintiff's allegations fail to give rise to a claim under RICO, as the facts in Plaintiff's complaint do not disclose the existence of an "enterprise" affecting interstate commerce or any arguable pattern of racketeering activity. *See United States v. Jenkins*, 902 F.2d 459 (6th Cir. 1990).

Plaintiff also claims that Defendants violated the ADA. Title II of the ADA provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To make out a prima facie case under Title II of the ADA, a plaintiff must establish that (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of his disability. *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005) (citing *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir.2003). Here, even if Plaintiff could show that he is handicapped within the meaning of the ADA, his complaint contains no allegations that he was

discriminated against solely because of his handicap. *Id.*; *see also Lee v. Michigan Parole Board*, No. 03-1775, 2004 WL 1532563, at *1 (6th Cir. June 23, 2004).

Finally, Plaintiff's supplemental pleadings set forth a laundry list of conclusory assertions regarding conduct which occurred from 2004 until February of 2005. These claims are barred by the statute of limitations. This court may, on its own motion, apply the statute of limitations to a § 1983 claim by a prisoner. *See Hardin v. Straub*, 490 U.S. 536, 109 S. Ct. 1998 (1989); *Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995); *Redd v. Gilless*, 857 F. Supp. 601, 605 (W.D. Tenn. 1994). The Sixth Circuit has held that sua sponte dismissal is appropriate under § 1915(e)(2) when a complaint bears an affirmative defense such as the statute of limitations and is therefore frivolous on its face. *Fraley v. Ohio Gallia Cty.*, No. 97-3564, 1998 WL 789385, at *1 (6th Cir. Oct. 30, 1998); *Day v. E.I. Dupont de Nemours and Co.*, No. 97-6233, 1998 WL 669939, at *1 (6th Cir. Sept. 17, 1998). Federal courts apply state personal injury statutes of limitations to claims brought under §1983. *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S. Ct. 1938, 1947 (1985); *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 180-181 (6th Cir. 1990). For civil rights suits filed in Michigan under §1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(8); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.) (per curiam), *cert. denied*, 479 U.S. 923, 107 S. Ct. 330 (1986); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, *1 (6th Cir. Feb. 2, 1999). Although state tolling provisions must be applied to § 1983 suits brought by prisoners, *Hardin*, 490 U.S. at 544; *Jones v. City of Hamtrack*, 905 F.2d 908, 909 (6th Cir. 1990), *cert. denied*, 498 U.S. 903 (1990), Michigan's tolling provision for imprisoned persons does not provide plaintiff any additional benefit in this case. *See* MICH. COMP. LAWS § 600.5851(9). Plaintiff did not file this action until November 20, 2008. As noted above, the conduct complained of in the supplemental

complaint occurred between 2004 and February of 2005. Therefore, it is barred by the statute of limitations.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that all of the named Defendants other than Defendant Ekdahl will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Ekdahl with regard to his claim that he was deprived of a shower, and clean clothes and bedding for four days after use of a chemical agent.

An Order consistent with this Opinion will be entered.


Dated:  5/18/09                                       /s/ R. Allan Edgar
                                                     R. ALLAN EDGAR
                                                     UNITED STATES DISTRICT JUDGE